**BREATHLESS ASSOCIATES, Plaintiff,**

**v.**

**FIRST SAVINGS & LOAN ASSOCIA-
TION OF BURKBURNETT,
Defendant.**

**Civ. A. No. 3–86–1256–H.**

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 18, 1986.

A.B. Conant, Jr. & Lisa A. Stegall, Shank Irwin & Conant, Dallas, Tex., for plaintiff.

David C. Mattka, Winstead McGuire Sechrest & Minick, David M. Taylor, Thompson Coe Cousins & Irons, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Justice.

Before the Court are Plaintiff's Motion for Summary Judgment, filed July 15, 1986; Defendant's Response and Cross-Mo-

tion for Partial Summary Judgment, filed October 6, 1986; Plaintiff's and Defendant's Briefs on the Uniform Customs & Practice for Documentary Credits (the "UCP"), filed November 3 and 4, 1986 respectively; Plaintiff's Motion for Extension of Time in which to respond to Defendant's Response to that motion, filed November 3, 1986; Plaintiff's Motion for Leave to Amend Complaint, filed November 6, 1986; and Defendant's Response, filed November 12, 1986. The Court concludes that Plaintiff's Motion for Summary Judgment should be GRANTED with respect to Letter of Credit No. 4–52; that Defendant's Motion for Partial Summary Judgment should be GRANTED with respect to certain of Plaintiff's claims but without prejudice to others; that Plaintiff's Motion for Extension should be DENIED; and that Plaintiff's Motion for Leave to Amend should be GRANTED with respect to certain claims in relation to Letter of Credit No. 4–53.

### Facts

Plaintiff Breathless Associates was the beneficiary of two documentary letters of credit issued by Defendant. Letter of Credit No. 4–52 created an irrevocable credit for the account of W.P. Barlow, Jr. up to an aggregate amount of $185,000.00 plus interest. The letter provided that payment would be made on presentment of "[t]he original promissory note ... issued by W.P. Barlow, Jr.... made payable to the order of BREATHLESS ASSOCIATES ..., dated April 28, 1983 and issued in the original principal amount of $185,000.00," in addition to other items. Letter of Credit No. 4–53 was identical to No. 4–52 except that it stated that it was for the account of W.L. Keetch, for an aggregate amount of $385,000.00, and was payable on presentment of a promissory note made by Keetch for that amount and dated April 28, 1983. Both letters also provided that they were subject to the UCP, International Chamber of Commerce Publication 290.

Richard Greenberg was a general partner in Breathless. Plaintiff's Memorandum in Support of its Motion for Summary Judgment, filed July 15, 1986, at 3. By some time before Plaintiff made presentment under Letter No. 4–53, Richard Greenberg knew that the Keetch's promissory notes did not conform to the letter and tried but was unable to obtain new, conforming notes and a letter. Deposition of Richard Greenberg, at 47–48, attached to Defendant's Response to Plaintiff's Motion for Leave to Amend, filed November 12, 1986.

On January 13, 1986 Plaintiff made presentment and demand under the credits. With respect to No. 4–52, Plaintiff presented a promissory note dated April 29 instead of April 28, 1983. With respect to No. 4–53, Plaintiff presented two promissory notes rather than one, although they were made by the right maker, bore the right date, and added up to the right amount. Defendant refused to make any payment, stating that it was "not authorized" to honor the letters. Defendant has continued to refuse to make payment. Defendant did not assert noncompliance of the notes presented with the terms of the credits, however, until October 6, 1986, long after Plaintiff's presentment on January 13 and the expiration of the credits on March 7, 1986.

Plaintiff does not dispute that Defendant in drafting the letters used forms supplied by Plaintiff. Deposition of R. Greenberg at 26–27. Apparently, however, Defendant filled in the blanks containing the terms on the basis of which Defendant now asserts noncompliance.

### Contentions of the Parties

Plaintiff seeks recovery for wrongful dishonor by Defendant. Defendant contends that its dishonor of Plaintiff's presentment and demand was not wrongful because the presentment was improper in that the notes presented by Plaintiff did not strictly comply with the terms of the credits. Plaintiff contends that presentment did strictly comply or, alternatively, that Defendant waived any noncompliance by failing to notify Plaintiff of any discrepancy

within a reasonable time. Defendant responds that the defect was not waived because it was incurable.

Plaintiff also suggests that Defendant had the promissory notes in its possession when it drafted the letters and that Defendant's failure to draft the letters so as to describe the notes accurately was either fraudulent or negligent. Defendant responds that Plaintiff may not recover from Defendant on grounds of fraud or negligence because Plaintiff had an opportunity to review the letters and failed to object that they were defective.

Plaintiff seeks summary judgment for wrongful dishonor of both letters. Defendant seeks summary judgment with respect only to Letter No. 4–53. Plaintiff requests leave to amend its complaint to add claims of fraud and negligence. Plaintiff also seeks an extension of time for response to Defendant's motion for partial summary judgment in order to conduct discovery of possible fraud or negligence by Defendant.

### Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Determination of the present motions turns on two issues, one of law and one of fact. The Court concludes first that as a matter of law, Plaintiff's presentment under Letter No. 4–52 sufficiently fulfilled the requirement of strict compliance, but presentment under Letter No. 4–53 did not; Defendant is therefore liable for wrongful dishonor of No. 4–52 but not of 4–53. Second, as a matter of fact, Defendant's failure to notify Plaintiff of the defect in presentment under No. 4–53 caused no damage to Plaintiff because Plaintiff already knew of the defect; Defendant therefore has no liability with respect to its failure to notify.

The parties agree that the effect of the provision in the letters that they are subject to the UCP is to incorporate the UCP into the letters as additional terms. Apparently, the parties also agree that this case is governed by Texas law, including the Texas Business and Commerce Code, which comprises the Texas version of the Uniform Commercial Code (the "UCC").

Decision of the present motions should be guided by an understanding of the purposes and policies behind the UCC and UCP. A letter of credit is an instrument that obliges the issuer to pay money to the beneficiary upon proper presentment under the letter. *Westwind Exploration v. Homestate Savings Ass'n*, 696 S.W.2d 378, 380–81 (Tex.1985). A transaction involving a letter of credit comprises at least three contracts. *See id.* at 381; *Philadelphia Gear Corp. v. Central Bank*, 717 F.2d 230, 235 (5th Cir.1983). The underlying contract is usually an agreement for sale by the beneficiary of the letter to the account party or customer of the issuer. *Westwind*, 696 S.W.2d at 381; *Philadelphia Gear*, 717 F.2d at 235. The second contract is between the issuer and its customer and provides in effect for the issuer to substitute its credit for that of the customer in exchange for a fee from the customer. *Id.* The third agreement is the letter of credit issued by the issuer to the beneficiary, in which the issuer promises to make payment to the beneficiary upon proper presentment. *Id.* The letter of credit may provide that the beneficiary must present not only its draft under the letter but also other described documents, usually evidencing performance by the beneficiary or nonpayment by the customer; such a letter is called a documentary letter of credit. *East Girard Savings Ass'n v. Citizens Nat'l Bank*, 593 F.2d 598, 601 (5th Cir. 1979); *see Tex. Bus. & Com. Code Ann.* § 5.103(2) (Vernon 1968) [all citations hereinafter to sections are to *Tex.Bus. & Com. Code Ann.* unless otherwise noted].

■ The issuer's liability for payment under the letter is contingent on proper presentment by the beneficiary. *West-*

*wind,* 696 S.W.2d at 381, citing § 5.114(a). Proper presentment requires that the documents presented strictly comply with the terms in the letter. *Westwind* at 381. An issuer must decide whether or not to make payment solely on the basis of the letter and the documents presented. *Philadelphia Gear* at 235; § 5.114(a) & (b); UCP art. 8(c) (I.C.C. Pub. 290). If the documents strictly comply, the issuer must make payment and is then entitled to reimbursement from the customer. *Philadelphia Gear* at 235; § 5.114(c). If the issuer makes payment on the basis of documents that do not strictly comply, however, the issuer is not entitled to reimbursement. *Philadelphia Gear* at 235. The letter of credit agreement is separate and independent from the underlying sale transaction, and the issuer has no obligation to look beyond the facial appearance of the documents. *Id.* In summary, both the UCC and the UCP evince a policy of holding an issuer liable only for careful examination of documents in its possession and not for inquiring into other matters, such as whether or not its customer or the beneficiary have satisfactorily performed under the underlying contract for sale.

Thus, the first issue to be determined is whether Plaintiff's presentment strictly complied with the terms of Letters No. 4–52 and 4–53, since if presentment did not strictly comply, Defendant's dishonor was not wrongful.

Little guidance exists as to what suffices for strict compliance. The Texas Supreme Court has held that unless the letter is patently ambiguous, the question of whether presentment strictly complied with the terms of the letter is a matter of law for the court. *Westwind,* 696 S.W.2d at 381. Several courts have indicated that at some point, a discrepancy may be so slight as not to justify dishonor. *See Beyene v. Irving Trust Co.,* 762 F.2d 4, 6 (2d Cir.1985); *Tosco Corp. v. F.D.I.C.,* 723 F.2d 1242, 1248 (6th Cir.1983); *Flagship Cruises, Ltd. v. New England Merchants Nat'l Bank,* 569 F.2d 699, 704–05 (1st Cir.1978).

A survey of recent cases yields nothing directly on point, however. For example, in *Beyene* the court held that the misspelling on a bill of lading of the buyer's name, Muhammed Soran, as "Sofan" was a material discrepancy justifying dishonor. 762 F.2d at 6. In *Voest-Alpine International Corp. v. Chase Manhattan Bank* the court held that the fact that certificates presented showed goods loaded between February 2 and 6 when the letter required proof of shipment by January 31 constituted a "glaring discrepancy." 707 F.2d 680, 683 (2d Cir.1983). The court in *Tosco* held that a draft containing "1" instead of "L" in "letter," "No." instead of "Number," and the addition of the city and state of the drawee did not warrant dishonor even under the strictest rule. 723 F.2d at 1248. The court in *Flagship* held that "No. 18506" sufficed instead of "Drawn under [issuer's initials] Credit No. 18506." 569 F.2d at 704. The court in *Courtaulds North America, Inc. v. North Carolina National Bank* held that a document showing "Imported Acrylic Yarn" instead of "100% Acrylic Yarn" warranted dishonor. 528 F.2d 802, 806–07 (4th Cir.1975).

This Court must consider the approach used by the Fifth Circuit in *East Girard. See* 593 F.2d at 602–03. As apparently occurred in the present case, the discrepancy in *East Girard* resulted from the issuer's failure to draft the letter so as accurately to describe the documents intended by the parties to be presented. Although the letter as drafted was not patently ambiguous, the Fifth Circuit held that because the issuer had used the wrong form of letter, the letter was nonetheless ambiguous in that the terms bore no meaningful relevance to the underlying transaction. 593 F.2d at 602. The Texas Supreme Court indicated in *Westwind* that constructions of a letter that would make performance impossible should be avoided, 696 S.W.2d at 382, and the court in *Flagship* held that a discrepancy would not justify dishonor if no possibility existed that the issuer could be misled to its detriment, 569 F.2d at 705.

The Court is reluctant to take this approach because it is inconsistent with the

policy of the UCP and the UCC of limiting the issuer's obligations to examination of documents. The letter in *East Girard* in fact involved a latent ambiguity that could not be discovered from a facial examination alone but only by inquiry into the parties' intent. Similarly, whether or not a letter as drafted would make performance impossible or whether or not the issuer might be misled to its detriment cannot be ascertained from the letter and documents alone.

■ The Court considers that a better approach is to consider the purposes of the strict compliance requirement and ask whether the discrepancy at hand implicates those purposes. Manifestly, the requirement has two purposes: to limit the obligations of the issuer to examination of documents while at the same time affording the customer the greatest possible assurance that the beneficiary will not be paid (nor the customer be liable for reimbursement) unless and until the beneficiary has performed its obligations—for example, shipment by a certain date—under the underlying contract for sale. A discrepancy therefore should not warrant dishonor unless it reflects an increased likelihood of defective performance or fraud on the part of the beneficiary. In deciding this question a court should consider only what may reasonably be inferred from the face of the documents.

■ For example, the discrepancy with respect to the dates in *Voest-Alpine* clearly evidenced possible untimeliness of shipment by the beneficiary in a case in which it might reasonably be inferred from the face of the documents that shipment by a certain date was an important, bargained-for aspect of the beneficiary's performance. In contrast, the date of execution of the promissory note secured by Letter No. 4–52 in the present case could have no relevance whatever to performance by Plaintiff. Moreover, it may reasonably be inferred from the nature of the transaction as shown by the documents that the date of execution of the promissory note was not an important term to either party. This inference supports a conclusion that the discrepancy of one day almost certainly resulted from inadvertence or some other cause and does not reflect an increased likelihood that Plaintiff either had not performed its obligations to the customer (i.e., delivery of title to the property being sold) or that Plaintiff's presentment was otherwise fraudulent.

The Court believes that this approach may be used to account consistently for the results in the majority of other cases in which strict compliance has been at issue. Although the approach would seem to impose the burden of additional inquiry on issuers, the inquiry need be undertaken only when a discrepancy exists, and the approach adheres to the policy of limiting issuers' obligations to examination of documents and avoids requiring them to investigate the parties' intent or other matters not reasonably inferable from the documents alone. In addition, this approach is consistent with the tenor and emphasis given to the strict compliance requirement by the Fifth Circuit in *Philadelphia Gear*, 717 F.2d *passim*.

■ Using this approach, therefore, the Court concludes that Plaintiff's presentment under Letter No. 4–52 was proper because, based on an examination of the documents alone, Defendant should have determined that the one-day discrepancy in the date of the promissory note did not reflect any increase in the likelihood of nonperformance or fraud by Plaintiff. The Court further concludes that Plaintiff's presentment of two separate notes under Letter No. 4–53 did not constitute proper presentment because the discrepancy was sufficiently significant that it could not have resulted from, for example, a mere typographical error, but rather did reflect an increased likelihood of possible fraud by the beneficiary. It should be noted that the issuer should not be required to assume even a very slightly increased risk of nonperformance or fraud by the beneficiary; the discrepancy certainly need not rise to the level of evidence required for purposes of proof. Defendant's dishonor of Plaintiff's presentment under No. 4–53 there-

fore was not wrongful and does not entitle Plaintiff to recover under that letter.

The next issue to be resolved is whether, as Plaintiff contends, Defendant nonetheless "waived" the defect in Plaintiff's presentment under Letter No. 4–53 by failing to notify Plaintiff of the defect. Defendant contends that no waiver occurred because the defect was incurable and Plaintiff did not rely to its detriment.

■ As stated above, Letter No. 4–53 incorporated the UCP, International Chamber of Commerce Publication 290. Article 8 of that version of the UCP contains these provisions:

> c. If ... the issuing bank considers that [the documents] appear on their face not to be in accordance with the terms and conditions of the credit, that bank must determine, on the basis of the documents alone, whether to claim that [presentment is improper].
>
> \* \* \* \* \* \*
>
> e. If such claim is to be made, notice to that effect, stating the reasons therefor, must, without delay, be given by cable or other expeditious means to the bank from which the documents have been received (the remitting bank) and such notice must state that the documents are being held at the disposal of such bank or are being returned thereto.
> f. If the issuing bank fails to hold the documents at the disposal of the remitting bank, or fails to return the documents to such bank, the issuing bank shall be precluded from claiming that [presentment was improper].

These paragraphs apparently contemplate a letter of credit transaction involving a remitting bank. No remitting bank was involved in the transaction in the present case. An agreement should be construed so as to give reasonable effect to every clause in the agreement. *Westwind,* 696 S.W.2d at 382. The Court concludes that since the beneficiary in this case occupies the same position as a remitting bank for purposes of the paragraphs above, the paragraphs should be construed as if they referred to Plaintiff instead of to a remitting bank.

These paragraphs of the UCP therefore created an obligation on the part of Defendant promptly to notify Plaintiff of Defendant's reasons for refusing to make payment. The Court notes, however, that paragraph f. prescribes a remedy only for an issuer's failure to return the presented documents, without any reference to a failure to notify. Apparently, the UCP sets forth the promise to notify without prescribing a remedy for breach of that promise.

■ The UCC does not require an issuer to notify the beneficiary of the grounds for dishonor and accordingly prescribes no remedy for failure to notify. The UCC does, however, provide that unless displaced by particular UCC provisions, law from other sources remains applicable. § 1.103; *see Travis Bank & Trust v. State,* 660 S.W.2d 851, 855 (Tex. App.—Houston [3d Dist.] 1983, no writ). The Court concludes that Plaintiff's remedy for Defendant's failure to notify is prescribed by the common law of contracts. The remedy therefore is recovery of actual damages proximately caused to Plaintiff by Defendant's breach. *Mead v. Johnson Group, Inc.,* 615 S.W.2d 685, 687 (Tex. 1981); *LeBlanc, Inc. v. Gulf Bitulithic Co.,* 412 S.W.2d 86, 94 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.).

If the defect in presentment was curable by the beneficiary, an issuer's failure to notify the beneficiary of the nature of the defect will usually have caused damages to the beneficiary in the amount of the demand or demands dishonored. If the defect was incurable, however, an issuer's failure to notify may not be supposed to have caused any damage to the beneficiary. Similarly, a failure to notify cannot have caused any damage to a beneficiary that had actual knowledge of the defect before making presentment. This analysis apparently was used by the Fifth Circuit in *Wing On* and is consistent with that court's decision in *Philadelphia Gear. See Wing On*

*Bank Limited of Hong Kong v. American Nat. Bank and Trust,* 457 F.2d 328, 329 (5th Cir.1972) (since defect was incurable, issuer that failed to notify was liable only for actual loss); *Philadelphia Gear,* 717 F.2d at 237 (since beneficiary knowingly presented nonconforming documents, issuer not liable). The Court considers that the concept of waiver, which requires a voluntary relinquishment of a known right, is both imperfectly adapted and unnecessary in these situations, although some courts have used the concept in cases involving incurable or known defects. *See Barclays Bank D.C.O. v. Mercantile Nat. Bank,* 481 F.2d 1224, 1236 (5th Cir.1973) (defect waived if not raised, since beneficiary might have cured); *Siderius, Inc. v. Wallace Co.,* 583 S.W.2d 852, 859 (Tex.Civ. App.—Tyler 1979, no writ) (issuer that notified beneficiary of one basis for dishonor thereby waived others, but only if beneficiary could have cured others but relied on issuer's notice).[1]

■ Applying this analysis in the present case, Defendant's uncontroverted summary judgment evidence establishes that before Plaintiff made presentment under Letter No. 4–53, Plaintiff both had knowledge of the discrepancy between the terms of the letter and the documents to be presented under it and had tried but been unable to cure that defect. Defendant's failure promptly to assert that discrepancy as a basis for dishonor can therefore have caused no damage to Plaintiff, and Plaintiff is not entitled to any recovery for Defendant's breach of its contractual promise to notify.

Plaintiff in its Motion for Extension of Time to respond to Defendant's Motion for Partial Summary Judgment seeks additional time in order to investigate possible negligence or fraud by Defendant in drafting Letter No. 4–53. However, Plaintiff cites no authority for the proposition that such negligence or fraud might be material to Plaintiff's claims based on the letter, the UCP, and Texas law. The Court has discovered no authority to that effect, with the possible exception of § 1.203, which imposes an obligation of good faith in the performance of all contracts within the UCC. The Court therefore DENIES Plaintiff's Motion for Extension, but the Court's granting of Defendant's Motion for Partial Summary Judgment shall be without prejudice to any rights Plaintiff may have based on § 1.203 or the law of fraud or negligence other than the UCP or UCC.

*Conclusion*

Because Plaintiff's presentment under Letter No. 4–52 was proper as a matter of law, and because Defendant does not dispute that Plaintiff would be entitled to demand and receive full payment under the letter but for the defect held in this opinion to be immaterial, summary judgment is GRANTED to Plaintiff against Defendant in the full amount of the letter, that is, $185,000.00. Because the pleadings and evidence conclusively establish that Plaintiff knew of the defect in the documents to be presented under Letter No. 4–53 and had tried and failed to cure the defect, Defendant's failure to notify Plaintiff of the defect did not cause any damage to Plaintiff. Defendant's Motion for Partial Summary Judgment is therefore GRANTED with respect to Plaintiff's claims other than any that Plaintiff may have under § 1.203 or based on negligence or fraud by Defendant. Plaintiff's Motion for Extension is DENIED, and leave is GRANTED for Plaintiff to amend its complaint to add any claims Plaintiff may have with respect to Letter No. 4–53 under § 1.203 or based on negligence or fraud.

SO ORDERED.

---

1. The Court notes that, unlike the Fifth Circuit in *Philadelphia Gear, see* 717 F.2d at 237, the Texas court in *Siderius* apparently did not consider an issuer's failure to notify to be immaterial even though the beneficiary knowingly presented defective documents, *see* 583 S.W.2d at 859.