**S.B. INTERNATIONAL, INC.,**
**Appellant,**

*v.*

**UNION BANK OF INDIA and**
**BancTexas, Dallas, N.A.,**
**Appellees.**

No. 05–88–01136–CV.

Court of Appeals of Texas,
Dallas.

Nov. 16, 1989.

Rehearing Denied Jan. 3, 1990.

Karen F. Gray, Dallas, for appellant.

W. Mike Baggett for BancTexas, Diane K. Lettelleir, Cynthia Hollingsworth, Union Bk of India, Stacy R. Obenhaus, Dallas, for appellees.

Before WHITHAM, BAKER and OVARD, JJ.

OPINION

OVARD, Justice.

In this letter of credit case, S.B. International, Inc. (SB) appeals from a judgment entered in favor of Union Bank of India (Union Bank) and BancTexas, Dallas, N.A. (BancTexas). In several points of error, SB raises two main issues: (1) whether certain bills of lading properly conformed to the letter of credit and (2) whether Union Bank's notice of dishonor was properly given. We affirm the trial court's judgment.

In February of 1984, Union Bank issued an irrevocable letter of credit in the amount of $74,280, which named SB as beneficiary. The letter stated that the

credit would be honored upon the presentation of drafts and documents covering a shipment of goods purporting to be "Claded three ply stainless steel circles with 55% to 60% Iron @ $1300/per ton cif Calcutta." The letter also stated that its terms would be subject to the Uniform Customs and Practices for Documentary Credits.[1]

In April and again in May of 1984, SB presented drafts, invoices, and bills of lading to BancTexas, which served as the remitting bank. The drafts totalled $66,889.10, and the invoices and bills of lading submitted with each draft represented separate shipments of goods. Although it is undisputed that the invoices correctly set forth the description of the goods as contained in the letter of credit, controversy arose concerning the two bills of lading. One bill of lading described the goods as "BXS—STEEL SHEETS (SECONDARY DEFECTIVE SCRAP)" "STEEL CIRCLES." The other bill of lading described the goods as "SKDS BXS—STEEL SHEETS (SECONDARY DEFECTIVE SCRAP)." The words "STEEL CIRCLES" on this bill of lading had been crossed through.

On each occasion, BancTexas accepted the documents, negotiated the drafts, and credited SB's checking account at BancTexas in the amount of the drafts. BancTexas then forwarded the drafts and documents to Union Bank. Union Bank dishonored both presentations, the first on May 22, 1984, and the second on May 31, 1984, by telexing a notice of dishonor to RepublicBank, Dallas, who served as its advising bank. Each telex gave as the reason for dishonor that the description of the goods in the two bills of lading did not conform to the description of the goods in the letter of credit. In each instance, after receiving the telex, RepublicBank immediately notified SB of Union Bank's dishonor and the specific reasons therefor. With this knowledge, SB took action to cure the deficien-

cies in its bills of lading, but was unsuccessful. Union Bank demanded reimbursement from BancTexas, which charged $66,889.10 back to SB's account and reimbursed Union Bank.

In a suit brought by SB against BancTexas and Union Bank, SB alleged that Union Bank was liable for wrongful dishonor of the letter of credit. It also alleged that BancTexas was liable for a wrongful charge against SB's account. Union Bank and BancTexas filed separate counterclaims against SB for breach of the warranty of presentment. The trial court granted partial summary judgment on Union Bank's claim that, as a matter of law, Union Bank was entitled to dishonor its letter of credit because the bills of lading were inconsistent on their face with the letter of credit. The fact issue concerning whether Union Bank had seasonably notified the proper parties of its dishonor, along with the other issues relating to the parties' claims, was tried without a jury. Following the trial, the court entered a take nothing judgment on all claims.

In point of error one, SB contends that the trial court erred in finding that the bills of lading failed to conform to the requirements of the letter of credit. SB argues that goods described in the bills of lading need not be identical to those described in the letter of credit and that their bills of lading were sufficiently descriptive. Articles 7, 8(c), and 32(c) of the UCP contain the standards for determining whether the bills of lading conform to the requirements of the letter of credit. Under these provisions, banks are required to use reasonable care in examining all documents to determine if they conform to the terms and conditions of the credit. Whether documents appear to be in accordance with the terms of the credit must be determined from the face of the documents.[2] If doc-

---

**1.** Both sides agree that this case is governed by the Uniform Customs and Practices for Documentary Credits (1974 Revision, International Chamber of Commerce Brochure no. 290), hereafter referred to as UCP.

**2.** All textual references, unless otherwise indicated, are to the UCP (1974 Revision)

Article 7 provides:
  Banks must examine all documents with reasonable care to ascertain that they appear on their face to be in accordance with the terms and conditions of the credit. Documents which appear on their face to be inconsistent with one another will be considered as not appearing on their face to be in

uments appear on their face to be inconsistent with one another, they will be considered as not conforming with the credit. When the documents are received by the issuing bank, it must consider from the face of the documents alone whether they are in accordance with the terms and conditions of the credit.[3] If the issuing bank determines that the documents are not in accordance with the credit, it must decide whether to claim that payment, acceptance, or negotiation was not effected as required by the credit. "The description of the goods in the commercial invoice must correspond with the description in the credit. In all other documents [*i.e.* bills of lading], the goods may be described in general terms *not inconsistent* with the description of the goods in the credit." UCP article 32(c) (emphasis added).

■ Our concern then is whether the descriptions in the bills of lading are inconsistent with the letter of credit. The description in the bills of lading may be more general than that in the invoices and credit. However, if the issuing bank properly considers the documents on their face to be inconsistent with one another, it can find they are not in accord with the terms of the credit and can dishonor their presentment. *See, e.g., Atari, Inc. v. Harris Trust and Savings Bank*, 599 F.Supp. 592, 598 (N.D. Ill.1984) (description differences in bills of lading and letters of credit), *aff'd in part, reversed in part, and remanded without opinion*, 785 F.2d 312 (7th Cir.1986); *Voest–Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 545 F.Supp. 301, 304 (S.D.N.Y.1982) (documents inconsistent on their face), *aff'd in part, rev'd in part, and remanded*, 707 F.2d 680 (2d Cir.1983); *Breathless Associates v. First Savings & Loan Assoc.*, 654 F.Supp. 832 (N.D.Tex. 1986) (conforming and nonconforming documents); *Waidmann v. Mercantile Trust Co.*, 711 S.W.2d 907, 914 (Mo.App.1986) (nonconforming documents). In making this document consistency determination, the issuer is charged with knowledge of banking industry practices, but not with practices of the industry out of which the credit arises. *Marino Indus. Corp. v. Chase Manhattan Bank, N.A.*, 686 F.2d 112, 115 (2d Cir.1982); J. Dolan, *The Law of Letters of Credit* ¶ 6.04[4] (1984). The inconsistency must be determined from the face of the documents. *See Atari*, 599 F.Supp. at 597; J. Dolan at ¶ 6.04[5][b] (1984); UCP arts. 7, 8(c).

■ In this case, the credit requires that the circles be of stainless steel. It further specifically requires an iron content of between 55% and 60%. In contrast, the bills of lading describe the circles as steel sheets of "defective scrap." Although these descriptions may be synonymous in the shipping industry, a banker, unfamiliar with this peculiar or unique terminology, could reasonably determine that a conflict existed. The credit describes goods requiring a distinct standard of quality, while the bills of lading describe goods that are devoid of any quality whatsoever. One bill even had the general description of "steel circles" marked through. While the description contained in the bills of lading need not be identical to the description in the credit, neither can it appear to be inconsistent on its face.

SB relies on *Atari* to support its claim that the bills of lading were consistent with the credit. *Atari*, 599 F.Supp. at 598. In *Atari*, the description in the credit described specific video games and accessories such as Pac Man, Space Invaders, and Defenders, with A/C adaptor and joy stick controls. The bills of lading described these goods as "games or toys with controller parts." The court found that these descriptions were not inconsistent. *Id.* We agree with that court's determination, but we consider our decision in accord with that of *Atari* in that the documents under review in this case are inconsistent. Be-

---

accordance with the terms and conditions of the credit.

**3.** Article 8(c) provides:

If, upon receipt of the documents, the issuing bank considers that they appear on their face not to be in accordance with the terms and conditions of the credit, that bank must determine, on the basis of the documents alone, whether to claim that payment, acceptance or negotiation was not effected in accordance with the terms and conditions of the credit.

cause we determine that the descriptions on the bills of lading are inconsistent with the credit, we conclude that Union'Bank's dishonor of the documents was proper.[4] Point of error one is overruled.

■ SB next contends that because Union Bank's notice of dishonor was improperly communicated, Union Bank is precluded from dishonoring the letter of credit. Specifically, SB argues that by notifying SB (through RepublicBank), the beneficiary, and *not* BancTexas, the remitting bank, Union Bank failed to comply with UCP article 8(e) which provides:

If such claim [that the documents presented fail to be in accordance with the terms and conditions of the letter of credit] is to be made, notice to that effect, stating the reasons therefor, must, without delay, be given by cable or other expeditious means to the bank from which the documents have been received (*the remitting bank*) and such notice must state that the documents are being returned thereto.

UCP art. 8(e) (emphasis added). While the record reflects that Union Bank failed to comply with article 8(e) when it did not notify BancTexas - of the dishonor of the letter of credit, SB has failed to show how, and to what extent, they were damaged by the noncompliance. Furthermore, article 8 of the UCP only precludes a dishonor of the letter of credit where the issuing bank "... fails to *hold the documents* at the disposal of the remitting bank, or fails to *return the documents* to such bank ..." UCP art. 8(f) (emphasis added); *see also Breathless*, 654 F.Supp. at 838 (UCP man-

dates promise to notify without providing remedy for breach of such promise).

SB concedes that they received immediate, actual notice of the dishonor through Republic Bank (Union Bank's advising bank), but argues that because BancTexas was not timely notified, Union Bank should be precluded from dishonoring the letter of credit for its failure to comply with article 8(e). There is no provision in the 1974 Revision of the UCP, nor is there any case interpreting that version of the UCP, which would allow a beneficiary to prevent the issuing bank from dishonoring for an article 8(e) violation.[5]

SB urges this Court to follow the rationale of *Bank of Cochin v. Manufacturers Hanover Trust Co.*, and hold that Union Bank's noncompliance with UCP article 8(e) results in a waiver of its right to dishonor. *Bank of Cochin v. Manufacturers Hanover Trust Co.*, 808 F.2d 209 (2d Cir.1986). However, *Bank of Cochin* involved an issuing bank suing a confirming/remitting bank for wrongful honor of a letter of credit. *Id.* at 210–11. There the issuing bank waited two weeks before notifying the confirming bank that the documents did not comply with the letter of credit. The second circuit held that, under the UCP article 8(e) and especially in light of "... this era of near instantaneous international communications ...," the issuing bank's untimely notification of defects resulted in a waiver of the issuing bank's right to dishonor. *Id.* at 213. *But see Breathless*, 654 F.Supp. at 839 (concept of waiver considered ill-adapted to letter of credit transactions). Although in this case

---

4. Union Bank argues that its letter of credit required "clean" shipping documents and that SB's use of bills of lading noting defective goods violated that requirement. Article 18 appears to provide additional support for the argument that the use of language describing goods as defective would make them inconsistent with descriptions lacking such notations. It provides as follows:

a. A clean shipping document is one which bears no superimposed clause or notation which expressly declares a defective condition of the goods and/or the packaging.
b. Banks will refuse shipping documents bearing such clauses or notations unless the credit expressly states the clauses or notations which may be accepted.

However, there is no summary judgment evidence as to any clause or notation being superimposed on the documents. Since we find Arts. 7, 8(c), and 32(c) determinative on the document consistency issue, we do not use article 18 in reaching our conclusion.

5. The 1983 Revision of the UCP expands the remedies available to a beneficiary for untimely notification of dishonor by the issuer of the letter of credit; however, the record reflects that both SB and Union Bank agreed that the letter of credit would be governed by the 1974 Revision of the UCP. *See generally,* UCP (1983 Revision).

the confirming/remitting bank (BancTexas) did not receive notice of the defect in documents until nearly a month after such defect was discovered, SB cannot now attempt to champion the cause of another to further bolster their position *vis-a-vis* Union Bank. This is especially true in light of the facts that SB received immediate, actual notice of the defects and that the defects were incurable. *See, e.g., Philadelphia Gear Corp. v. Central Bank*, 717 F.2d 230, 236–37 (5th Cir.1983) (issuer not liable for wrongful dishonor where beneficiary knowingly presents nonconforming documents); *Breathless*, 654 F.Supp. at 838–39, (issuer's failure to notify beneficiary irrelevant on damages issue where defect incurable or where beneficiary possesses actual knowledge of defect); *Waidmann*, 711 S.W.2d at 916 (discussing curable/incurable defects). *But see Wing On Bank Ltd. of Hong Kong v. American Nat'l Bank & Trust Co.*, 457 F.2d 328, 328–29 (5th Cir.1972) (issuer liable only for actual loss where defect incurable). Points of error two, three, and four are overruled. Because of our disposition of this case, we need not consider the remaining points and cross points of error. We affirm the judgments below.