**PACIFIC RELIANT INDUSTRIES, INC.,**
an Oregon corporation, Plaintiff

**v.**

**AMERIKA SAMOA BANK, a banking corporation,
MALUA HUNKIN as an individual and DBA PARADISE
DEVELOPMENT COMPANY, AMERICAN SAMOA
GOVERNMENT and DOES I-V, Defendants**

High Court of American Samoa
Trial Division

CA No. 128-88

August 8, 1990

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, Roy J.D. Hall Jr.
For Defendant Amerika Samoa Bank, William H. Reardon
For Defendant Hunkin dba Paradise Development, Gata E. Gurr

On Motion for Reconsideration:

*Introduction*

We granted summary judgment holding defendant Amerika Samoa Bank ("ASB") liable on its $300,000 irrevocable standby letter of credit issued to plaintiff Pacific Reliant Industries, Inc. ("PACREL"). ASB moved for reconsideration contending, among other things, that damages was an issue of fact properly before the Court which precluded the grant of summary judgment. After the hearing on the motion, we allowed further argument and briefing on the question of damages only, and otherwise rejected ASB's remaining contentions summarily. We here consider the argument on damages.

ASB's argument centers on the provisions of § 5-115(1) of the Uniform Commercial Code (UCC). This provision reads:

When an issuer wrongfully dishonors a draft or demand for payment presented under a credit the person entitled to honor has with respect to any documents the rights of a person in the position of a seller (Section 2-707) and may recover from the issuer the face amount of the draft or demand together with incidental damages under Section 2-710 on seller's incidental damages and interest but *less any amount realized by resale or other use or disposition of the subject matter of the transaction*. In the event no resale or other utilization is made the documents, goods or other subject matter involved in the transaction must be turned over to the issuer on payment of judgment.

UCC § 5-115(1) (emphasis added).

*Discussion*

*I.      Applicability of the UCC*

An assumption fundamental to ASB's position is that the UCC applies in American Samoa. The immediate difficultly with this position, however, is that the Fono has failed to adopt the UCC, and obviously it is not for the Court to attempt by judicial fiat that which the legislature has declined to do. ASB's assertion that this Court has held the UCC applicable in this case is not correct. We merely noted the rule of other jurisdictions dealing with a situation where the Uniform Customs and Practice for Documentary Credits (UCP) was silent or ambiguous; that is, analogous UCC provisions may be utilized if consistent with the UCP. *See Bank of Cochin Ltd v. Manufacturers Hanover Trust*, 612 F.Supp. 1533, 1542 (D.C.N.Y. 1985). As this Court recently noted in *Security Pacific National Bank v. M.V. Conquest*, 4 A.S.R.2d 59, 71 (1987),

[t]here is abundant precedent for the judicial practice of adopting as judge-made law the substance of statutes that are not binding on the court. For instance, the Uniform Commercial Code does not apply to contracts for the sale of real estate, but some state courts have adopted provisions of the UCC by analogy as rules of property law. Similarly, many state legislatures have adopted comparative negligence statutes; in some other jurisdictions the courts, regarding this new development

as a desirable one, have modified the old judge-made
law to incorporate comparative negligence.

While the UCC does not of its own force apply in American Samoa, that
is not to say that certain rules embodied in widely adopted uniform
codes, such as the UCC, may not otherwise be applicable in the territory
when they evince or restate generally accepted principles of law.[1] Thus,
we were indeed able to look to analogous provisions of the UCC for
guidance on the question of what was "reasonable time." Here,
however, we are not faced with a similar gap in the UCP which requires
filling in through analogous reasoning. Although the UCP is not explicit
on damages as remedial relief for wrongful dishonor, a letter of credit by
its very nature and purpose clearly implies that liability will be for the
face amount of the letter of credit. In contrast, there is no obvious
number of days that constitutes a "reasonable time," and hence our
earlier recourse to the UCC, given available precedent. On the other
hand, resort to the UCC is not, in our view, equally compelling here.
The resale portion of UCC § 5-115 is hardly an apparent rule of general
law. *No* cases applying this rule (or, for that matter, rejecting it) were
cited to the Court by counsel, nor were any such cases found by the
Court's own research. The cases construing UCC § 5-115 tend to
increase the damages awarded above the letter of credit amount as a
result of the inclusion of "incidental damages." *See, e.g.,* cases collected
in Annotation, *Damages Recoverable for Wrongful Dishonor of Letter of
Credit Under UCC § 5-115*, 2 A.L.R. 4th 665 (1980).[2]

Additionally, the logic of the resale provision in a letter of credit
context is not perhaps free of question. While increasing a damage
award above the letter of credit's face amount preserves the sanctity of
this important commercial device and does not increase the risk of
wrongful refusals to pay, adopting a rule that would call into question the
exact amount available on a given letter of credit is far more repugnant
to the purpose and utility of the letter of credit, and would make possible

---

[1] A.S.C.A. § 1.0201(4) declares so much of the common law of England as is
suitable to conditions in American Samoa to be effective law in American Samoa. In *Tung
v. Ah Sam*, 4 A.S.R. 764 (1971), the common law of England was clarified to mean "that
body of jurisprudence as applied and modified by the courts of the United States at the time
the statute was adopted and as since construed." *Id.* at 768.

[2] This is somewhat surprising in the light of the number of jurisdictions which
have adopted a version of UCC § 5-115. *See* 3 R. Anderson, Uniform Commercial Code
§ 5-115:2 (2d ed. 1971).

spurious claims of resale in order to thwart legitimate collection efforts. In a similar vein, the district court in *Toyota Industrial Trucks v. Citizens National Bank*, 611 F.2d 465 (3d Cir. 1979), refused to impose a duty to mitigate on a letter of credit beneficiary under § 5-115(1) because this "would negate the essential purpose of the UCC concept of the letter of credit by relieving the issuer of its primary and sole responsibility on the letter." *Id.* at 470. The resale provision in effect applies a rule of common law contracts to letters of credit.[3]

It is well established that the letter of credit exists independently of the obligations of the underlying contracts;[4] the letter of credit must be paid when the documents required by the letter of credit are presented, regardless of the events transpiring between the buyer and seller. This avoids litigation of the underlying facts and assures prompt payment in most letter of credit situations. The portion of UCC § 5-115 reducing the award on a letter of credit by the amount garnered by the resale of the items in question mitigates the utility of the letter of credit device by contaminating the proceeding with extraneous facts whose proof may be difficult and contested. The independence of the letter of credit from the underlying transactions reflects the policy decision that such disputes should not be resolved prior to the payment of the letter of credit but afterward, when the fall-out of the underlying contracts is being litigated. This preserves the utility of the letter of credit.

We are not convinced that UCC § 5-115 reflects a generally applied rule of law, and in view of the reservations we have expressed

---

[3]     In *Breathless Associates v. First Savings & Loan Association of Burkburnett*, 654 F. Supp 832 (N.D. Tex. 1986), a court considering the same UCP provisions considered in our decision granting summary judgment, held that the UCC permitted other sources of law where the UCC itself is silent as to the remedy, and therefore applied the common law of contracts to hold that the beneficiary could recover only the actual damages caused by the bank's breach. *Id.* at 838. In *Breathless Associates*, the UCC opened the door to the common law; in American Samoa, the inapplicability of the UCC in general leaves that avenue doubtful. Furthermore, it has been held in letter of credit situations that the "measure of damages used in ordinary contract cases is inapplicable because a letter of credit simply is not an ordinary contract." *East Girard Savings Association v. Citizens National Bank and Trust Company of Baytown*, 593 F.2d 598, 603 (5th Cir. 1979).

[4]     Three separate contracts exist in letter of credit transactions: one between the issuing bank and its customer (agreeing to issue the letter of credit), another between the bank's customer and the beneficiary (agreeing to use a letter of credit), and a third between the issuing bank and the beneficiary (evincing the bank's promise to pay conforming drafts against the letter of credit). *Venizelos S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 464-65 (2d Cir. 1970).

concerning this provision's application to the letter of credit situation, we are disposed to reject ASB's contention.

## II.  Requirements of UCC § 5-115(1)

Even if applicable, the current facts do not come within the UCC § 5-115 framework.  The rule of § 5-115 applies to sale of goods situations, but not to "pure" credit situations such as guaranty letters of credit.  *See, e.g., East Girard Savings Association v. Citizens National Bank and Trust Company of Baytown*, 593 F.2d 598, 603 (5th Cir. 1979); *Housing Security, Inc. v. Maine National Bank*, 391 A.2d 311 (Maine. 1978).  While the situation here seems closer to a sale of goods situation than to a pure credit situation, it still may not qualify for the application of § 5-115.  As the court in *East Girard Savings Association* explained, the independence of the letter of credit from the underlying contracts is in no way inconsistent with the UCC § 5-115 resale provisions, because the letter of credit itself will identify the exact goods which are resold, and so the court need not look to the underlying contracts to identify the goods.  The letter of credit here in question may not have sufficiently identified the goods in question to enable the court to follow their resale[5] without resorting to the actual underlying contracts; it required only a "Beneficiary's signed statement" and a "Notice of default of invoice . . . ."  While a notice of default on an invoice might well have a copy of the invoice attached, the letter of credit itself does not require this, and so the exact goods might not be identified in the letter of credit, especially in this case where the $300,000 letter of credit was used to guarantee payment for several sequential shipments of materials --- with a total value of roughly $1 million --- and not one specific single shipment.

For reasons given the motion is denied.

It is so Ordered.

───────────────

[5]   The exact fate of the goods remains mysterious, and may well become another dark tale of the South Pacific.