BANK OF COCHIN, LTD.,
Plaintiff-Appellant,

v.

MANUFACTURERS HANOVER TRUST COMPANY and St. Lucia Enterprises, Ltd., Defendants-Appellees.

No. 64, Docket 85–7664.

United States Court of Appeals, Second Circuit.

Argued Sept. 18, 1986.

Decided Dec. 24, 1986.

**210**

Jeffry L. Feldman, New York City (Dunn & Zuckerman, P.C., New York City, of counsel), for plaintiff-appellant.

Robert M. Rosenblith, New York City (Eugenia B. DeRosa, New York City, of counsel), for defendant-appellee.

Before LUMBARD, OAKES and MINER, Circuit Judges.

MINER, Circuit Judge:

Bank of Cochin, Ltd. ("Cochin"), the issuer of an international letter of credit, appeals from a summary judgment of the United States District Court for the Southern District of New York (Cannella, J.) entered in favor of Manufacturers Hanover Trust Company ("MHT"), the confirming bank. The district court held that although MHT wrongfully had paid under the terms of the letter of credit, Cochin was precluded from claiming wrongful honor because it failed to comply with the timely notice provisions of Article 8 of "Uniform Customs and Practice for Documentary Credits (1974 Revision)," Int'l Chamber of Commerce, Pub. No. 290 (the "UCP"). We affirm the judgment of the district court on

the ground that Cochin's failure to notify MHT of the specific discrepancies in the documents and of the documents' dispositions "without delay," as required by UCP 8(e), precludes Cochin from asserting MHT's noncompliance with the terms of the letter of credit.

## BACKGROUND

This dispute arises from a massive fraud perpetrated against Cochin, its customer, Vishwa Niryat (Pvt.) Ltd. ("Vishwa"), and MHT through the use of an irrevocable letter of credit issued for the benefit of St. Lucia Enterprises, Ltd. ("St. Lucia"). In India, on February 8, 1980, Vishwa requested Cochin to issue an international letter of credit, covering up to $798,000, for the purchase of 1,000 metric tons of aluminum melting scrap. By telex to MHT on February 12, 1980, received on February 14, 1980, Cochin inquired about the "means, standing and respectibility [sic]," App. at 152, of St. Lucia. MHT responded by cable transmitted on February 14 that it had "no pertinent information." App. at 70. Nevertheless, by telex dated February 22, Cochin conveyed the terms and conditions of the letter of credit to MHT, and requested MHT to confirm the letter and advise St. Lucia of its establishment. On February 25, MHT mailed to St. Lucia a written advice that the letter of credit had been established. On February 29, after obtaining additional information pertaining to insurance and certain other matters from Cochin, MHT issued its confirmation of the letter, as amended. Four more amendments were initiated by Cochin and confirmed by MHT in March and April of 1980. By its terms, the letter of credit was subject to the 1974 Revision of the UCP.

On June 9, St. Lucia presented MHT with supporting documents and sight drafts in the amount of $796,603.50, payable to "St. Lucia Enterprises." The documents showed that the aluminum scrap was shipped from Bremen, West Germany to Bombay, India on May 29—eleven days earlier. On June 13, MHT negotiated the drafts, issued a check payable to "St. Lucia

Enterprises," and debited Cochin's account for that amount. That same day, MHT sent a copy of its payment advice, the drafts, and supporting documents to Cochin via registered air mail. The check, indorsed "St. Lucia Enterprises, Ltd.," was deposited in St. Lucia's Citibank account on June 17, 1980. The proceeds were withdrawn from that account during the period June 23–27, 1980. Apparently, Citibank had collected the funds at some point between June 17 and June 23.

On June 18, the day following the deposit of the check, Cochin inquired of MHT by telex whether St. Lucia had presented the documents. MHT responded, on June 20, that the documents had been mailed to India on the thirteenth. Cochin finally received the documents on Saturday, June 21. That same day, Cochin examined the documents and telexed MHT: "We find certain discrepencies [sic].... kindly donot [sic] make payment...." Joint App. at 73. MHT replied, on Monday, June 23, "[w]e note your telex fails to give reason fro [sic] rejection documents as required UCP Article 8 Stop According our records documents fully complied credit terms and beneficiary already paid therefore we cannot accept your refusal of documents." *Id.* at 156. On June 27, and again on July 3 and 4, Cochin advised MHT of specific discrepancies. On July 4, Cochin telexed MHT that the documents were being returned to MHT.

In fact, the documentation submitted by St. Lucia to MHT had been fraudulently issued. St. Lucia had not shipped any aluminum scrap to India, but had perpetrated a fraud on both banks and on Vishwa. After receiving payment on the letter of credit, St. Lucia vanished.

Cochin instituted a diversity action against MHT, claiming wrongful honor of the letter of credit on documents that did not strictly comply with the letter's conditions. Finding that the parties presented nearly identical statements of facts, the district court disposed of the suit on summary judgment, in favor of MHT. *Bank of Cochin Ltd. v. Manufacturers Hanover Trust,* 612 F.Supp. 1533 (S.D.N.Y.1985). The court found that MHT had paid the letter wrongfully under a strict compliance standard due to two discrepancies in the documents.[1] However, the court held that Cochin was precluded from asserting MHT's wrongful honor because it failed to comply with the timely notice provisions of Article 8(e) of the UCP.

On appeal, Cochin contends that the district court erred in finding that Cochin failed to give timely notice of the discrepancies in the documents and of the disposition of the documents. MHT, on the other hand, counters that the district court correctly held that Cochin's untimely notice constituted a waiver of its right to assert the noncompliance of the documents, and argues that a substantial compliance rather than a strict compliance standard should have been used to measure the documents' compliance with the terms of the letter of credit. As discussed below, we affirm the district court's judgment on the rationale that Cochin's untimely notice constituted a waiver of its right to assert the documents' noncompliance. Our affirmation on waiver grounds makes it unnecessary to decide whether a substantial, rather than a strict, compliance standard should have been used to measure the documents' conformity.

## DISCUSSION

Central to this appeal is the interpretation of key undefined terms in Article 8 of the 1974 version of the UCP, applicable to the international letter of credit at issue. Article 8(b) provides that payment, accept-

---

1. Of the two discrepancies found by the district court, one was specified by Cochin on June 27, and the other was specified on July 3. The June 27th discrepancy was a variance in an insurance covernote number. However, by letter to this court, both MHT and Cochin now agree that the variance can be explained by a glitch in the telex communication of the information from Cochin to MHT. The July 3rd discrepancy in the documents presented to MHT by St. Lucia consisted of a payment on documents to "St. Lucia Enterprises" rather than to "St. Lucia Enterprises, Ltd."

ance, or negotiation by a confirming bank, against documents that facially comport with the terms and conditions of a credit, binds the issuing bank to take up the documents and reimburse the confirming bank. In the instant case, MHT was authorized to make payment against certain documents described in the letter of credit. If MHT paid on documents that, on their face, accorded with the terms of the credit, under the Article 8(b) provision, Cochin would be bound to reimburse MHT. However, under Article 8(c), if Cochin determined, upon examination of the documents, that they did not facially comport with the terms and conditions of the credit, it could claim that payment by MHT was wrongful, thus relieving Cochin of its reimbursement obligation as issuing bank. In order to effectuate the vital policy of promoting certainty in letter of credit transactions, the UCP provides the following safeguards in Article 8:

> (d) The issuing banks shall have a *reasonable time* to examine the documents and to determine ... whether to make such a claim [of wrongful honor].
>
> (e) If such claim is to be made, notice to that effect, stating the reasons therefor, must, *without delay*, be given by cable or other *expeditious* means to the bank from which the documents have been received (the remitting bank) and such notice must state that the documents are being held at the disposal of such bank or are being returned thereto.

UCP 8(d), (e) (emphasis added). These provisions have been interpreted to incorporate a penalty against an issuing bank that does not assert the noncompliance of documents in a timely fashion:

> If the documents in any respect do not conform to the terms of the credit, the obligor bank must forthwith determine whether it will stand upon its rights to reject the documents or whether it will waive the defect. It will not do for bank or buyer to wait and ride the market. *If*

*it does so, it will have waived its objection to nonconformity of documents.* Article 8 records the dual obligation of the obligor who believes that documents do not conform to the terms of the credit. Protest must be prompt; rejection must be unequivocal; and upon rejection the documents must either be forthwith returned or the obligor must forthwith represent that it holds them at the disposal of the presenter.

H. Harfield, *Bank Credits & Acceptances* 232 (5th ed. 1974) (emphasis added); *see also Marino Industries Corp. v. Chase Manhattan Bank, N.A.*, 686 F.2d 112, 118 (2d Cir.1982). Thus, failure timely to notify the confirming bank of discrepancies in the documents as required by UCP 8(d) and (e) may estop the issuing bank from asserting noncompliance. An additional penalty is explicitly provided in UCP 8(f) against an issuing bank that fails either to hold the documents at the disposal of the remitting bank or to return the documents. Under these circumstances, the issuing bank is precluded from asserting a claim of noncompliance.[2]

In sum, under the Article 8 scheme, payment by MHT on the letter of credit bound Cochin to reimburse *unless* Cochin took the required action set forth in 8(d) and (e) to avoid its obligation. Cochin was required (1) to examine the documents and determine, within a reasonable time, whether to make a claim that MHT's payment was not in compliance with the terms of the credit; and (2) without delay and using expeditious means, to notify MHT of the specific defects and to advise MHT of the disposition of the documents.

The principal issue presented on this appeal is whether the six to thirteen day delay by Cochin in notifying MHT of the specific defects and of the disposition of the documents either estops Cochin from asserting the defects or brings the UCP 8(f) penalty into effect. The district court

---

**2.** As the district court noted, "the [1983] revised UCP allows explicitly for the imposition of the [8(f) preclusion] sanction for failure to comply with the 'reasonable time' provision as well; however, this interpretation is not clear under the parties' explicit choice of law, the 1974 UCP." 612 F.Supp. 1533, 1542 (S.D.N.Y.1985).

ruled that Cochin was estopped from asserting the defects because the six to thirteen day delay was unreasonable. It relied on U.C.C. § 5–112, which mandates three banking days in which an issuer must act, and applied that three-day period to the UCP. Because we hold that Cochin failed to notify MHT "expeditiously" and "without delay" of specific defects and of the disposition of the documents, and is therefore precluded from asserting noncompliance, we need not decide whether a three-day time period should be read into the UCP's Article 8(d) reasonable time requirement.

Having determined that the documents did not comply with the terms of the letter of credit, Cochin was required to specify the defects and notify MHT of the disposition of the documents *without delay.* On June 21, when Cochin received the documents from MHT, it examined them, decided to assert noncompliance, and sent a telex the same day.

On June 27th, six days after Cochin discovered the defects and asserted MHT's noncompliance, Cochin first telexed MHT to specify certain discrepancies. Only one of these asserted discrepancies was found by the district court to differ from the terms and conditions of the letter of credit under a strict compliance standard. As discussed in note 1, *supra,* this discrepancy subsequently has been explained to be the result of a technical transmission problem and is not, therefore, a noncomplying defect. It was not until July 3 that Cochin telexed MHT to specify the only remaining discrepancy that the district court found not in strict compliance. Notice of the disposition of the documents was not telexed to MHT until July 4. We are faced, therefore, with a twelve to thirteen day period from Cochin's initial inspection of the documents to its notification of the noncomplying defect and its decision to return the documents to MHT. We must decide whether such a twelve to thirteen day period satisfies the Article 8(d) "without delay" requirement.

"Without delay" is defined neither in Article 8 nor in any case law dealing with international letters of credit. However, the phrase is akin to "immediate (*at once*), instant, instantaneous, instantly, prompt." W. Burton, *Legal Thesaurus* 1053 (1980). All of these synonyms connote a sense of urgent action within the shortest interval of time possible. However one wishes to define "without delay," it is apparent that a twelve to thirteen day lapse of time cannot be considered notification "without delay" under any reasonable definition of that phrase. In this era of near instantaneous international communications, we can find no rationale to justify Cochin's delay in informing MHT of the specific defects and of its intention to return the documents. Had this information been imparted in a timely fashion, some part or all of the funds might have been recovered before they were removed from St. Lucia's Citibank account. Cochin was at all times in the best position to learn of the fraudulent nature of St. Lucia's activities and to prevent payment of the funds. Its failure to take advantage of that position, in spite of several opportunities to do so, resulted in the loss it seeks to charge to MHT here.

We hold, therefore, that Cochin's delay in specifying the defects estopped it from asserting that the documents did not comply with the letter of credit, and that Cochin's two-week delay in notifying MHT of its intent to return the documents precludes this suit. We therefore find it unnecessary to decide whether the district court applied the correct standard to measure the documents' compliance with the terms and conditions of the letter of credit.

## CONCLUSION

For the reasons stated above, we affirm the district court's judgment.