**KUNTAL, S.A., Plaintiff,**

v.

**The BANK OF NEW YORK, Defendant.**

**No. 87 Civ. 8096 (JMW).**

United States District Court,
S.D. New York.

Jan. 13, 1989.

Elizabeth Taylor, Connell & Taylor, New York City, for plaintiff.

Frank W. Hodgkinson, Legal Dept., Bank of New York, New York City, for defendant.

## MEMORANDUM AND ORDER

WALKER, District Judge:

Currently before the Court are cross motions for summary judgment pursuant to Fed.R.Civ.P. 56. The parties agree that no material issues of fact remain and have stipulated to the essential underlying facts.

## BACKGROUND

The relevant facts can be summarized in brief. On October 14, 1986, the Bank of New York ("the Bank") issued letter of credit no. I 23825 (the "LC") for the account of a New York buyer, Six Continents Ltd. ("Six Continents") in favor of Kuntal, S.A. ("Kuntal"), a Uruguayan seller of sweaters to Six Continents.[1] Hispano Americana Casa Bancaria of Montevideo, Uruguay ("Hisbank") acted as the presenting bank on the credit, and subsequently assigned its rights under the LC to Kuntal. By its terms, the LC falls under the Uniform Customs and Practice for Documentary Credits (1983 Revision), International Chamber of Commerce Publication 400 ("UCP 400").

Six Continents, a New York corporation, sought to purchase cotton sweaters from Kuntal in Montevideo, Uruguay. On January 20, 1987, the cotton sweaters were shipped by air from Uruguay to New York. On February 12, 1987, Six Continents requested that the Bank release the goods to Six Continents. On that same day, the Bank issued an air release and Six Continents received the goods. Neither Kuntal nor Hisbank authorized the Bank to issue an air release to Six Continents for the goods.

On February 19, 1987, the Bank received the shipping documents. There were three discrepancies between the LC and the shipping documents: (1) shipment was effected to New York instead of Boston as in the LC; (2) the LC called for shipment of a greater number of sweaters than was actually shipped; and (3) the airway bill was consigned to the Bank instead of to the account party as required by the LC. On March 4, 1987, the Bank first gave Hisbank notice of the Bank's refusal of the documents for the three reasons above, and

---

1. The parties explain that two amendments—of no relevance to this litigation—were subsequently added to the letter of credit.

informed Hisbank that the Bank was holding the documents at Hisbank's disposal.

The parties further agree that both the shipping documents and the February 12 air release reflect 38 cartons of sweaters. On March 9, 1987, Six Continents placed 29 cartons of sweaters in a bonded warehouse. By letter dated March 18, 1987, Six Continents informed the Bank not only that 38 cartons of sweaters were repacked into 29 cartons, but also that Six Continents had requested a packing list from Six Continents' customer.

To date, the Bank has refused payment under the LC to either Hisbank or Kuntal. Kuntal brought this action seeking payment pursuant to the terms of the LC. Plaintiff recognizes that the discrepancies in the documents would, in the ordinary course of business, justify the Bank's refusal to honor the letter of credit. *See, e.g., Dixon, Irmaos & Cia, Ltda. v. Chase National Bank,* 144 F.2d 759, 762 (2d Cir.), *cert. denied,* 324 U.S. 850, 65 S.Ct. 687, 89 L.Ed. 1410 (1944) (holding that a beneficiary must strictly comply with the conditions of a letter of credit). Before this Court, however, plaintiff presents two discrete legal questions, arguing in the alternative that a favorable answer to either compels judgment in its favor. First, did the Bank, by its release of the goods to its customer, waive its objections to the discrepancies in the documents? And, second, did the Bank, by its two week delay not only in determining whether to accept or refuse the documents but also in giving notice of its refusal of the documents, waive its objections to the discrepancies in the documents? It is unnecessary to address plaintiff's first argument; the Court concludes that plaintiff's second argument supports its request for summary judgment.

## DISCUSSION

Under the UCP 400, if an issuing bank decides to refuse letter of credit documents, it "must give notice to that effect *without delay* by telecommunication or, if that is not possible, *by other expeditious* means, to the bank from which it received the documents ... or to the beneficiary ...." UCP 400, Article 16(d) (emphasis added). The UCP 400 further provides that if the issuing bank fails to act in accordance with Article 16(d), then the bank "shall be precluded from claiming that the documents are not in accordance with the terms and conditions of the credit." *Id.* Article 16(e).

Plaintiff argues that the Bank's two week delay in giving Kuntal notice of the Bank's decision to refuse the documents waives the discrepancies therein. The Bank presents essentially the same story under a slightly different light. The documents, the Bank states, arrived at the Bank on February 19, 1987.

> Under UCP 16(c), an issuing bank is allowed a reasonable time to examine the documents, and the Bank examined the submitted documents two business days later on February 23, 1987. 9 days later on March 4, 1987, the Bank gave notice to Hisbank [which, as noted above, has assigned its rights in this matter to Kuntal] under Article 16(d) of the UCP.

Def.Mem. at 8. The Bank explains that "the delay in giving Article 16(d) notice was for the purpose of allowing Six Continents to decide whether it would accept a deal that been altered unilaterally by Kuntal." *Id.* at 9.

Nowhere, however, does the Bank suggest why Six Continents needed 9 full days to reach a decision on whether or not to accept the deal. Furthermore, its position is "at odds with the basic letter of credit tenet that banks deal solely with documents, not in goods ..." *Bank of Cochin Ltd. v. Manufacturers Hanover Trust,* 612 F.Supp. 1533, 1543 (S.D.N.Y. 1985), *aff'd,* 808 F.2d 209 (2d Cir.1986).[2]

The Bank correctly notes that UCP 400 does not specifically define the terms "reasonable time" or "without delay." However, "the phrase ['without delay'] is akin

---

2. The *Cochin* case addressed Articles 8(d) and (e) of the 1974 version of the UCP, the predecessor to UCP 400. Articles 16(c) and (d) from the 1983 revision are virtually identical to Articles 8(d) and (e), a fact neither side in this case disputes.

to 'immediate (*at once*), instant, instantaneous, instantly, prompt.' All of these synonyms connote a sense of urgent action within the shortest interval of time possible." *Cochin*, 808 F.2d at 213 (citation omitted) (holding that "a twelve to thirteen day lapse of time cannot be considered notification 'without delay' under any reasonable definition of that phrase"). In addition, the Bank's "argument would defeat the letter of credit's function of being a swift, fluid and reliable financing device." *Cochin*, 612 F.Supp. at 1543 (citation omitted).

Although the facts of this case admittedly are not as compelling as those that were present in *Cochin*—which involved large scale fraud—the same principle animates both decisions. In the absence of any persuasive and reasonable justification for the Bank's 9 day delay following its examination of the documents, this Court concludes that the delay waived the issuing bank's right to object to discrepancies between the LC and the relevant shipping documents.[3] As the Second Circuit Court of Appeals explained, "[i]n this era or near instantaneous international communications, we can find no rationale to justify [the Bank's] delay in informing [the beneficiary] of the specific defects and of its intention to return the documents." *Cochin*, 808 F.2d at 213. In this case, the Bank has offered no convincing rationale to justify its delay.

## CONCLUSION

Accordingly, the Court grants plaintiff's motion for summary judgment. The parties are directed to submit a judgment to the Court one week from the date of this Memorandum.

---

**3.** For the purposes of this Memorandum, the Court accepts the defendant's contention that it waited only 9 days, and not two weeks as argued by plaintiff, before it notified Kuntal of its decision to reject the documents.