**PACIFIC RELIANT INDUSTRIES, INC., Plaintiff**

**v.**

**AMERIKA SAMOA BANK, A Banking Corporation, MALUA HUNKIN as an individual and dba PARADISE DEVELOPMENT COMPANY, AMERICAN SAMOA GOVERNMENT, and DOES I-V, Defendants**

High Court of American Samoa
Trial Division

CA No. 128-88

February 1, 1990

Before KRUSE, Chief Justice, OLO, Associate Judge, and VAIVAO, Associate Judge.

Counsel: For Plaintiff, Roy J.D. Hall Jr.
　　　　　For Defendant Amerika Samoa Bank, William H. Reardon
　　　　　For Defendant Hunkin, Gata E. Gurr

On Motion for Summary Judgment:

*Introduction*

Plaintiff, PACIFIC RELIANT INDUSTRIES INC. (hereinafter PACREL), has filed a motion for summary judgment against defendant AMERIKA SAMOA BANK (hereinafter A.S.B.). The parties are not in disagreement on the essential facts; they disagree on what legal result should follow. A.S.B. established on behalf of its customer PARADISE DEVELOPMENT COMPANY (hereinafter P.D.C.), its "irrevocable standby letter of credit" in favor of PACREL "for the account of Paradise Development Company, Inc., to the extent of *Three Hundred Thousand and No cents* ($300,000.00 U.S.)." As is standard in such situations, the letter of credit enabled P.D.C. to purchase construction materials from PACREL in Oregon by relying on the bank's credit. The "standby" feature of the letter of credit means that the bank is not called upon to honor a draft until and unless, for some reason, the customer has failed to pay what it owes.

Two virtually identical letters of credit were issued, the first on August 12, 1987, and the second on October 19, 1987. The second was apparently issued because the first letter of credit expired in December of 1987 and P.D.C. anticipated requiring the use of the credit facility for a longer period. Accordingly, the second, or renewed, letter of credit contained the extended expiry date of March 15, 1988. Both instruments, which were drafted and signed by the A.S.B., contained the following provision: "This credit is subject to the uniform customs and practice for documentary credits (1983 Revision) International Chamber of Commerce Documents No. 400." Plaintiff's Exhibits A and B. The Uniform Customs and Practice for Documentary Credits, customarily referred to as the UCP or Uniform Customs, embodies an effort by international bankers at consensual regulation. Prepared under the

auspices of the International Chamber of Commerce, the UCP reduces to codified form the customs and practices of the mercantile world relating to letter of credit transactions.

The business arrangement broke down early in 1988 when PACREL apparently did not receive payment for certain invoices. PACREL then attempted to fall back on the letter of credit and on February 23, 1988, notified A.S.B. of the default on the invoices. It is unclear when exactly the first formal demand for payment was made to A.S.B. Exhibit E1, a telex to A.S.B. from the Hong Kong and Shanghai Banking Corporation of Portland, Oregon (PACREL's bank, hereinafter the "Hongkongbank"), dated March 8, 1988, indicates that A.S.B. had received the documents by February 29, 1988. A.S.B.'s opposition to the motion for summary judgment claims that they were received on March 1, 1988. On March 9, 1988, the Hongkongbank telexed A.S.B. directing the latter's attention to the requirements of the UCP --- quoting in part from Article 16 (c), (d), and (e) --- regarding the issuing bank's duty to timely notify refusal and reasons of refusal or otherwise be estopped thereafter from claiming any deficiencies with the documents. A.S.B. did not respond until March 10, 1988, when it telexed the Hongkongbank that it would not honor the letter of credit because PACREL had not complied with the terms of the letter of credit. The nature, however, of the noncompliance was not specified. On the following day, March 11, 1988, the Hongkongbank informed A.S.B. by telex that it had received a letter by fax from P.D.C. (A.S.B.'s customer) accepting any and all discrepancies in the documents. On March 16, 1988, the day after the letter of credit expired, A.S.B.'s attorney wrote to Hongkongbank in the "hope of clarifying the situation [presumably of dishonor] for your bank." The Court has reviewed the contents of this letter against the terms of the letter of credit, and we are none the wiser as to the exact nature of the nonconformities giving rise to dishonor. However, in opposition to the motion for summary judgment A.S.B. has raised the claim that the documents presented by PACREL did not comply with the terms of the letter of credit in that a "copy" of the bill of lading was submitted when the "original" was required by the terms of the letter of credit. A.S.B. accordingly argues that a question of fact remains for trial. (If in fact the documents presented to A.S.B. conformed to the letter of credit requirements, then A.S.B. of course has no defense.)

PACREL, on the other hand, submits that it must nonetheless prevail even assuming for the sake of argument that the documents were at variance with the terms and conditions of the letter of credit. It

contends that under the terms of the UCP, which were expressly incorporated into the letter of credit by A.S.B.'s own draftsman, A.S.B. was precluded from claiming that the documents were not in accordance with the terms and conditions of the letter of credit because of its failure to assert noncompliance in the timely manner required by the UCP. Such failure, it is further argued, constitutes A.S.B.'s acceptance of any deficiencies.

Alternatively, PACREL also claims to prevail because A.S.B.'s customer P.D.C. accepted any deficiencies in its March 11, 1988, letter to Hongkongbank.

To these claims A.S.B. raises two defenses: 1) PACREL does not have standing to make a claim based on the UCP; and 2) P.D.C could not waive the deficiencies for the bank.

*Discussion*

The first inquiry is whether any claim exists under the UCP, and, if so, whether A.S.B. acted in conformity with the requirements of the UCP, specifically with Articles 16(c)[1] and 16(d).[2] Articles 16(c) and 16(d) give the A.S.B. a reasonable time to examine the documents; however, once the bank has decided to refuse a request for payment on

---

[1] UCP Article 16(c) reads: "The issuing bank shall have a reasonable time in which to examine the documents and to determine as above whether to take up or refuse the documents."

[2] UCP Article 16(d) reads:
> If the issuing bank decides to refuse the documents, it must give notice to that effect without delay by telecommunication or, if that is not possible, by other expeditious means, to the bank from which it received the documents (the remitting bank), or to the beneficiary, if it received the documents directly from him. Such notice must state the discrepancies in respect of which the issuing bank refuses the documents and must also state whether it is holding the documents at the disposal of, or is returning them to, the presentor (remitting bank or the beneficiary, as the case may be). The issuing bank shall then be entitled to claim from the remitting bank refund of any reimbursement which may have been made to that bank.

the letter of credit, the bank must give notice of this without delay. The notice must state the discrepancies and state whether the bank is holding the documents for the presentor or returning them. This provision promotes the cure of documentary deficiencies before the letter of credit expires. *Bank of Cochin Ltd. v. Manufacturers Hanover Trust*, 612 F. Supp 1533, 1542 (D.C.N.Y. 1985), *aff'd*, 808 F.2d 209 (2nd Cir. 1986); *Marino Industries v. Chase Manhattan Bank, N.A.*, 686 F.2d 112, 118 (2nd Cir. 1982). If the bank does not comply with 16(c) and 16(d), then the succeeding 16(e) provides that any deficiencies may not be asserted.[3]

A.S.B. first runs afoul of Article 16(c)'s restriction of the period for consideration of documents to a "reasonable time". The UCP does not define a "reasonable time," but "[w]hen the UCP is silent or ambiguous, analogous UCC provisions may be utilized if consistent with the UCP." *Bank of Cochin Ltd v. Manufacturers Hanover Trust*, 612 F. Supp at 1542. The Uniform Commercial Code (UCC) provides for a period of three banking days for an issuer to honor or reject a documentary draft for payment. UCC § 5-112 (1985). Here, A.S.B. received the demand for payment at the latest on March 1 and it telexed its rejection on March 10 to Hongkongbank.[4] This six-day delay clearly exceeded a reasonable time. The reasonable time expired on March 4; therefore, even if A.S.B. had rejected the demand on March 7, the reasonable time would have already expired. This strict measure makes perfect sense in light of the fact that the clock is ticking on all letters of credit, and that it is impossible for a beneficiary to attempt a cure unless he receives notice of any rejection in a timely manner. It has been held in a similar situation, without relying on the UCP, that a failure to raise any objection within the three days waives *all* objections. *Crocker*

---

[3]     UCP Article 16(e) states:
                If the issuing bank fails to act in accordance
                with the provisions of paragraphs (c) and (d)
                of this article and/or fails to hold the
                documents at the disposal of, or to return them
                to, the presentor, the issuing bank shall be
                precluded from claiming that the documents
                are not in accordance with the terms and
                conditions of the credit.

[4]     This portion of the discussion assumes that A.S.B.'s rejection was substantively sufficient — in accordance with UCP Article 16(d) — to constitute a rejection, in order to explore its timeliness.

*Commercial Services v. Countryside Bank*, 538 F. Supp. 1360, 1363 (N.D. Ill. 1981).

It is clear that A.S.B. also violated Article 16(d), which requires the rejection notice to state 1) the discrepancies and 2) whether the documents were being returned to the presentor or were being held at the presentor's disposal. Although the Hongkongbank received a notice of the rejection on March 10, 1988, that notice was not adequate under the UCP as it neither specifically listed the discrepancies nor informed A.S.B. whether the documents were being returned or being held. Furthermore, the March 16 communication to the Hongkongbank did *not* state what was being done with the documents. A.S.B. did not comply with Article 16(d).

As with Articles 16(c) and 16(d), A.S.B. does not contest noncompliance with the provisions of Article 16(e). Article 16(e) imposes the same penalty --- namely, preclusion from claiming noncompliance --- for violation of Articles 16(c) and 16(d). A.S.B.'s violation of 16(e), which provides an independent basis for summary judgment for PACREL, occurred when A.S.B. did not state whether it would return or hold the relevant documents as 16(e) also requires.

Although these provisions may seem technical, their obvious design is the deterrence of issuing banks from failing to timely assert noncompliance of documents. Indeed, these provisions incorporate a penalty for these very purposes. *Bank of Cochin v. Manufacturers Hanover Trust, Co.*, 808 F.2d at 212.

> If the documents in any respect do not conform to the terms of the credit, the obligor bank must forthwith determine whether it will stand upon its rights to reject the documents or whether it will waive the defect. It will not do for bank or buyer to wait and ride the market. If it does so, it will have waived its objection to nonconformity of the documents. Article 8 (now Article 16 after the 1983 Revision) records the dual obligation of the obligor who believes that documents do not conform to the terms of the credit. Protest must be prompt; rejection must be unequivocal; and upon rejection the documents must either be forthwith returned or the obligor must forthwith represent that it holds them at the disposal of the presenter.

*Id.* (quoting H. Hartfield, Bank Credits & Acceptances 232 (5th ed. 1974)). These strict rules are intended to ensure that letters of credit, which are important tools of international commerce, retain their effectiveness. If issuing banks were free to stall and waffle in their responsibilities, or lose track of crucial and possibly unique documents, the effectiveness of the letter of credit system in aid of international commerce would be seriously blunted.

We next turn to the question whether PACREL has standing to bring this claim. A.S.B.'s argument that PACREL lacks standing to assert a claim under the UCP is not persuasive. The argument relies on Article 16(d), which states that if the issuing bank decides to refuse the documents, it must give notice without delay "to the bank from which it received the documents (the remitting bank), or to the beneficiary, if it received the documents directly from him." This language refers to giving notice; it does not, as A.S.B. contends, limit the issuing bank's obligation to only that party which actually presents the documents. Article 16 does not divest PACREL of its rights under the UCP merely because its bank, the Hongkongbank, presented the documents to A.S.B. A more reasonable construction of this language is that it requires A.S.B. to give "notice" of its refusal to that party which actually submits the documents. Were it otherwise, the applicability of the UCP would turn on the happenstance of whether a beneficiary or the beneficiary's bank or attorney actually presented the documents. By having its bank present the documents rather than doing so itself, PACREL did not surrender its rights under the UCP.[5]

Finally, we are of the opinion that P.D.C. could waive any nonconformities. It has been noted that "[w]aiver of non-conforming documents can also be found from statements by officials of the issuing bank *or from customer authorization.*" *Bank of Cochin Ltd v. Manufacturers Hanover Trust*, 508 F. Supp. at 1541 (emphasis added) (citations omitted). *See also International Leather Distributors, Inc. v. Chase Manhattan Bank*, 464 F. Supp. 1197 (S.D.N.Y. 1979). Allowing a customer to authorize waiver of nonconforming documents should not

---

[5]     Even if we did construe this provision of the UCP as the A.S.B. urges, PACREL would still have standing because it is clear that the Hongkongbank was acting on *behalf* of PACREL. Thus, as PACREL's agent, the Hongkongbank's actions may be imputed to PACREL. *Curtis Co. v. United States*, 262 U.S. 215, 222-23 (1923). Alternatively, the Hongkongbank could be viewed as PACREL's alter ego. *See generally* 3 Am. Jur. 2d *Agency* § 3 (1986) (citation omitted). In either case, PACREL has standing.

expose the issuing bank to any increased liability, since presumably the bank would have protected itself with some type of security before issuing the letter. Such customer authorization could also preserve business relationships in the face of unjustified refusal by the bank to honor legitimate claims on the letter of credit. In any event, UCP Article 16 provides a more than ample basis for this decision, and therefore additional discussion is not necessary for our purposes here.

### Conclusion

Our conclusion that A.S.B. is precluded from asserting any discrepancies with the documents by virtue of its total failure to comply with the requirements of UCP Article 16 is necessarily dispositive of A.S.B.'s claim to factual issues concerning discrepancies with the documents. PACREL is entitled to judgment against A.S.B. as a matter of law. PACREL's motion for summary judgment is granted; however, this opinion does not rule on PACREL's prayer for attorney's fees as no basis for that relief has been shown.[6]

It is so Ordered.

---

[6] Counsel's reference to the provisions of UCP Article 12(e) ("Banks shall be responsible for any consequences arising from their failure to follow the procedures set out in the preceding paragraphs") as furnishing a claim for attorney's fees is at best desperate. UCP Article 12 is specifically concerned with "teletransmissions."