**ALASKA TEXTILE CO., INC., Plaintiff,**

v.

**LLOYD WILLIAMS FASHIONS, INC.,** Lloyd Williams International, Inc., Fairfield–Noble Corp. doing business under the firm name and style of "Cathy Hardwick, Div. of Fairfield–Noble Corp.", and the Chase Manhattan Bank, N.A., Defendants.

**No. 88 Civ. 7103 (CMM).**

United States District Court, S.D. New York.

Nov. 1, 1991.

Kreindler & Relkin, Brett J. Meyer, New York City, for plaintiff.

Liddle, O'Connor, Finkelstein & Robinson, Andrew S. O'Connor, New York City, for Chase Manhattan Bank, N.A., defendant.

## OPINION

METZNER, Senior District Judge:

Plaintiff, Alaska Textile Co., (Alaska), seeks $95,538 in damages from Chase Manhattan Bank, N.A., (Chase), for the alleged wrongful dishonor of two letters of credit issued by Chase to Alaska as beneficiary. As Chase is a corporation organized under the laws of the United States the court has subject matter jurisdiction pursuant to 12 U.S.C. § 632.

Alaska is a small business engaged in the importation of fabric from India, and is owned by Amnon Kashi. In early 1988 it received three orders from Lloyd Williams Fashions, Inc., (Lloyd), a manufacturer of ladies wear, for Dupioni silk to be shipped from India to Lloyd's factory in Hong Kong. Chase, at Lloyd's request, issued two letters of credit in favor of Alaska for $82,500 and $47,141.25, respectively.

On April 26, 1988, Merchants Bank of New York, (Merchants), acting on behalf of Alaska, reviewed the documents for submission to Chase to obtain payment on the letters of credit. Temistocles Garces, (a/k/a "Junior"), Merchants' letter of credit examiner, noticed three discrepancies: (1) the documents were presented more than twenty-one days after the date the goods were shipped; (2) the packing lists contained unauthenticated corrections changing the width of the Dupioni silk from 48/50″ to 48″; (3) and the airway bill lacked a "notify party" designation. Junior informed Kashi of these discrepancies. Kashi was desperate for cash to save his business, and told Merchants to present the documents to Chase "as is." Junior's collection letter to Chase used the industry accepted phrase "presented on an approval basis" to indicate that discrepancies in the documents existed, and that Alaska was asking Chase to request Lloyd to waive these discrepancies and authorize payment.

On April 27, 1988 Merchants presented the collection letter and the documents to Chase. Chase inspected the documents for one letter of credit on May 2, and for the second letter of credit on May 3, 1988, and determined that discrepancies existed which justified dishonor. However, follow-ing the instructions of the collection letter, the bank requested Lloyd to waive the discrepancies. Junior contacted Chase by telephone on May 9 and was informed by Chase of the discrepancies and that it was still waiting to hear from Lloyd. Junior voiced no objections.

By May 4, Kashi knew of Chase's refusal to pay without Lloyd's approval. On May 5 he went to Lloyd's place of business and asked that Lloyd waive the discrepancies, because he desperately needed the money to pay his supplier. The last thing he wanted was for Lloyd to notify Chase that it would not waive. The next day Lloyd agreed to pay if Kashi would accept a 10 per cent discount on the amount due. Kashi was amenable but then Lloyd failed to waive the discrepancies and make payment even at a 10 per cent discount.

Kashi kept after Lloyd which then offered to pay the discounted amount within 60 days, but Kashi refused this latest offer. Lloyd then informed Chase of its refusal to waive the discrepancies. On May 18, 1988, Chase sent a telex to Merchants formally dishonoring the documents and listing some discrepancies in addition to those mentioned above. It stated that the documents were being held at Merchants' disposal.

■ In cases arising under 12 U.S.C. § 632, a court applies federal common law choice of law rules, *Wells Fargo Asia Ltd. v. Citibank, N.A.,* 695 F.Supp. 1450, 1454 (S.D.N.Y.1988), which in the instant case mandate the application of New York law because this state has the most significant contacts with this litigation. *Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786, 794–95 (2d Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981). Additionally, the letters explicitly were subject to the *Uniform Customs Practices for Documentary Credits,* Pub. No. 400 (1983 Revision) ("UCP") which, under New York law, supersedes the Uniform Commercial Code. *See* N.Y.U.C.C. § 5–102(4) (McKinney 1990).

■ An issuing bank need honor a letter of credit only when the documents sub-

mitted by the beneficiary strictly comply with the letter's terms. *Marino Industries v. Chase Manhattan Bank, N.A.*, 686 F.2d 112, 114–115 (2d Cir.1982); *Bank of Cochin Ltd. v. Manufacturers Hanover Trust*, 808 F.2d 209 (2d Cir.1986). "Literal compliance with" the letter of credit's specifications is essential and "[d]ocuments nearly the same as those required are not good enough." *Voest–Alpine Intern. Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 683 (2d Cir.1983).

■ Alaska does not deny the fact that the packing lists contained unauthorized corrections or that the shipping documents were presented more than twenty-one days late. Thus, under the rule of strict compliance these two variances alone justified Chase's dishonor, and this court need not make findings as to the other alleged defects. *Marino, supra*, 686 F.2d at 118.

■ Plaintiff argues, however, that under Article 16 of the UCP, Chase waived its objections to the discrepancies because of its delay not only in determining whether to accept or reject the documents but also in giving notice of its ultimate refusal. According to Article 16(c) "[t]he issuing bank shall have a reasonable time in which to examine the documents and to determine" whether to accept or reject them. 16(d) provides that "[i]f the issuing bank decides to refuse the documents, it must give notice to that effect *without delay* by telecommunication or, if that is not possible, by other expeditious means, to the bank from which it received the documents, or to the beneficiary." (Emphasis added). Under 16(e) failure to comply with the timeliness requirements of either 16(c) or 16(d) shall result in the issuing bank being "precluded from claiming that the documents are not in accordance with the terms and conditions of the credit."

The UCP does not specify what constitutes a "reasonable time" under 16(c) for the bank to decide whether to accept the documents but it is the common practice of the banking industry in New York to construe 16(c) as meaning three banking days. In *Bank of Cochin, supra*, the district court adapted the industry practice, but in affirming the judgment, the court of appeals expressly withheld decision as to whether the three day time limit should be read into the UCP. *Bank of Cochin, supra*, 808 F.2d at 213.

This case presents an unusual situation that neither the UCP nor any letter of credit case law address. Alaska was aware of the documents' discrepancies before it presented them, and knew that it could not cure the defect of late presentment. Nonetheless, because Alaska urgently needed the payment from Lloyd and wanted the deal to go through, it submitted the documents to Chase "on an approval basis." In so doing, Alaska was asking Chase to refrain from exercising its right to reject the discrepant documents immediately after inspection, and instead to request the customer's waiver of the discrepancies. By making this request and at the same time urging Lloyd to waive the discrepancies, Alaska has waived its right to strict compliance with UCP's Article 16(c).

Plaintiff has failed to provide proof to charge Chase with violating 16(d). We have no dates as to when Kashi refused the 60–day extension of payment which would have triggered the obligation of Chase to dishonor the letter of credit.

■ Alaska further urges that Chase waived its right to dishonor the letters of credit because its May 18th telex to Alaska did not adequately specify that late presentment was one of the reasons for the denial. Article 16(d) requires that an issuing bank "state the discrepancies in respect of which the issuing bank refuses the documents" when giving notice of rejection to the presenter. In the telex, Chase listed several discrepancies, one of which was the "late presentation of documents". Alaska contends that 16(d) requires greater specificity than was present in the phrase Chase employed. Nowhere does the UCP mandate such preciseness. Further, the UCP refers to late presentment only twice: in the case of the expiration of the letter of credit and when the documents are presented more than twenty-one days after the mandated shipping date. Since the letters of credit had not yet expired, "late presen-

tation of documents" could have only meant "late presentments." This claim is without merit.

The plaintiff's claim is dismissed.

So ordered.