**FULL–BRIGHT INDUSTRIAL CO., LTD., Plaintiff,**

v.

**LERNER STORES, INC. and Huntington National Bank, Defendants.**

**No. 90 Civ. 5054 (CSH).**

United States District Court, S.D. New York.

April 8, 1993.

Laurie R. Josephs [term 04/15/93], Friedman, Wang & Bleiberg, P.C., New York City, for Huntington Nat. Bank, defendant [term 04/15/93].

Stephen F. Harmon, Parker Chapin Flattau & Klimpl, New York City, for Lerner Stores, Inc., defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This diversity case is before the Court on plaintiff's motion for summary judgment against defendant Huntington National Bank. A separate summary judgment motion against Lerner Stores will be addressed in a separate opinion.

### BACKGROUND

The plaintiff Full–Bright Industrial Co. ("Full–Bright") is a manufacturer of ladies' wearing apparel, and is a citizen of the Republic of Korea. The defendant Huntington National Bank ("HNB") is a citizen of the state of Ohio, having its principal place of business in Columbus, Ohio. The defendant Lerner Stores ("Lerner") is a retail chain of stores that buys and sells ladies' wearing apparel, and is a citizen of the state of New York, having its principal place of business in New York City.

This dispute arises out of a commercial transaction for the sale of goods between Full–Bright and Lerner. Pursuant to that transaction, defendant Lerner agreed to open letters of credit ("L/C's") covering the purchase price of the garments ordered from

the plaintiff. Defendant HNB issued two letters of credit with the plaintiff as the beneficiary. The second letter of credit, No. L/C 113139, was for $263,340.00, which represented payment for the 39,600 garments, that were to be delivered to Lerner's freight forwarder in Korea by August 30, 1989. L/C 113139, by its terms, was to expire on September 15, 1989.

On or about September 4, 1989, plaintiff, through its bank, sent HNB the required documentation for 18,000 of the 39,600 garments. HNB received the documentation on September 8, 1989, and determined that same day that there were discrepancies on the face of the documents. HNB sent notice of the discrepancies to Lerner, along with the message, "please advise".

On or about September 9, 1989, plaintiff, through its bank, sent HNB the required documentation for the remaining 21,600 garments. HNB received the documentation on September 13, 1989, and determined on that same day that there were discrepancies on the face of the documents. HNB sent notice of the discrepancies to Lerner, along with the message, "please advise".

On September 18, 1989, HNB decided to reject the first set of documents, which it had possessed for ten (10) days, six of which were business days. It notified plaintiff's bank of its decision by telex.

On September 20, 1989, HNB decided to reject the second set of documents, which it had possessed for seven (7) days, four of which were business days. It notified plaintiff's bank of its decision by telex.

On October 17, 1989, plaintiff, through its bank, sent a complete set of revised documents which purportedly corrected the alleged discrepancies. HNB received those documents on October 19, 1989. From the record, however, it appears HNB took no action on the revised documents.

Plaintiff's bank sent a number of telexes to HNB, demanding payment on the L/C, or an explanation for the delay. HNB responded on October 26 that the documents would not be returned, and that the matter was now being handled by defendant Lerner and plaintiff Full–Bright directly. *See* Telex, October 26, 1989.

HNB did not return plaintiff's documents to plaintiff's bank until November 17, 1989.

HNB claims that it is not obligated to pay out on the L/C because plaintiff's documents did not strictly comply with the terms of L/C 113139.[1] Full–Bright contends that HNB is estopped from asserting non-compliance of the documents because of its delay in processing them.

## DISCUSSION

### I. *Standards for Summary Judgment*

Under Fed.R.Civ.P. 56(c), the moving party is entitled to summary judgment if the papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On such a motion, "a court's responsibility is to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991) (citing *Knight v. U.S. Fire Insurance*, 804 F.2d 9 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)) (citation omitted). The responding party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' ... or defeat the motion through 'mere speculation or conjecture.'" *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (citations omitted). While the party resisting summary judgment must show a dispute of fact, it must also be a material fact in light of the substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,*

---

**1.** Plaintiff does not dispute that the documents originally submitted to HNB did not strictly comply with the terms of the letter of credit.

*Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## II. *Liability under L/C 113139*

█ A commercial letter of credit is a common payment mechanism in international trade. Typically, the buyer (the applicant) arranges with his bank (the issuing bank) to issue a letter of credit in favor of the seller (the beneficiary) for the amount of the purchase price. The applicant sets forth the terms the bank must incorporate into the credit. The letter of credit represents the issuing bank's irrevocable promise to pay the seller-beneficiary when the latter presents certain documents (*e.g.* documents of title, transportation, insurance, or invoices). *Alaska Textile v. Chase Manhattan,* 982 F.2d 813, 815 (2d Cir.1992).

█ It is a fundamental principle of letters of credit that the bank's promise to pay the beneficiary under the letter of credit is completely independent of the underlying sales contract between the buyer and the seller. *See, e.g., Bank of China v. Chan,* 937 F.2d 780 (2d Cir.1991); *All Service Exportacao, Importacao Comercio, S.A., New York Branch,* 921 F.2d 32 (2d Cir.1990). The bank's promise to the beneficiary is direct and absolute. Accordingly, it is no defense for the bank to claim that the seller's goods were non-conforming.

█ A second principle of letters of credit is that the beneficiary of the letter of credit must strictly comply with the terms of the letter. *See, e.g., Trifinery v. Banque Paribas,* 762 F.Supp. 1119 (S.D.N.Y.1991); *Texpor Traders, Inc. v. Trust Co. Bank,* 720 F.Supp. 1100 (S.D.N.Y.1989).

Further principles governing letters of credit are set forth in the Uniform Customs and Practice for Documentary Credits established by the International Chamber of Commerce ("UCP").[2] Article 16 of the UCP provides in pertinent part:

b. If, upon receipt of the documents, the issuing bank considers that they appear on their face, not to be in accordance with the terms and conditions of the credit, it must determine, on the basis of

the documents alone, whether to take up such documents or to refuse them and claim that they appear, on their face, not to be in accordance with the terms and conditions of the credit.

c. The issuing bank shall have reasonable time in which to examine the documents and to determine, as above, whether to take up or to refuse the documents.

d. If the issuing bank decides to refuse the documents, it must give notice to that effect, without delay, by telecommunication or, if that is not possible, by other expeditious means, to the bank from which it received the documents (the remitting bank), or to the beneficiary, if it received the documents directly from him. Such notice must state the discrepancies in respect of which the issuing bank refused the documents and also must state whether it is holding the documents at the disposal of, or is returning them to, the presenter (remitting bank or beneficiary, as the case may be). The issuing bank then shall be entitled to claim from the remitting bank refund of any reimbursement that may have been made to that bank.

e. If the issuing bank fails to act in accordance with the provision of paragraphs (c) and (d) of this article and/or fails to hold the documents at the disposal of, or to return them to, the presenter, the issuing bank shall be precluded from claiming that the documents are not in accordance with the terms and conditions of the credit.

█ HNB claims that it acted in conformance with the UCP, in rejecting the documents within a reasonable time for failure to strictly comply with the terms of the letter of credit. Plaintiff Full–Bright argues that defendant HNB is estopped from claiming that the documents were defective because of the delay in rejecting the documents.

There is no dispute that HNB held the relevant documents for ten days and seven days after noticing the discrepancies, before notifying plaintiff's bank. HNB contends

**2.** The letter of credit at issue specifically provides that it is subject to the UCP.

that this was a reasonable time; Full–Bright claims those periods of time were unnecessarily long. Much of the dispute thus turns on what constitutes a "reasonable time" as set forth in paragraphs (c) and (d) of Article 16.

Full–Bright notes that at least one court in this district found a nine day period in between discovery of the discrepancy and notification of the beneficiary to be too long, *see Kuntal, S.A. v. Bank of New York*, 703 F.Supp. 312 (S.D.N.Y.1989), while the Second Circuit found a thirteen to fourteen day delay too long, *see Bank of Cochin v. Manufacturers Hanover Trust*, 808 F.2d 209, 212 (2d Cir.1986). As a matter of law, Full–Bright argues, HNB's ten day delay was unreasonable, and the seven day delay was unreasonable as well.

HNB claims that the delay was necessary to determine whether the discrepancies in the documents were of such a nature that HNB would be willing to waive them and pay out on the letter of credit despite the lack of strict compliance. HNB asserts that in practice, it is the issuing bank's customer who must waive any discrepancies, to protect the bank from liability for making payment on deficient documents. Accordingly, its determination to accept or reject the documents turned on Lerner's decision on whether to require strict compliance.

Turning first to the argument that seven or ten days constitutes an unreasonable delay under the UCP, I note that several courts have tried to define "reasonable time" as a specific number of days. The Second Circuit, however, has recently held that the reasonableness of time depends heavily on the nature, purpose, and circumstances of each case. *See Alaska Textile*, 982 F.2d at 821–23. Applying that principle to the case at bar, I conclude that the reasonableness of the 7 and 10 day periods depends on the propriety of HNB turning to Lerner for advice on the waiver issue.

Plaintiff objects to this consultation with Lerner for two reasons. First, it argues that any obligation the bank had to Lerner was separate and independent from its obligation under the letter of credit. According to the UCP, the determination of whether or not to accept the documentation is made on the face of the documents alone. *See* Article 16(b) ("[the issuing bank] must determine, on the basis of the documents alone, whether to take up such documents or to refuse them …").

Secondly, Full–Bright argues that the time it took HNB to consult with Lerner allowed the letter of credit to expire, and precluded plaintiff from curing the deficiencies in the documentation.

I need not address Full–Bright's second objection because I find that HNB's consultation with Lerner over whether or not to waive the irregularities in the documents, was contrary to the principles set forth in the UCP; accordingly, the delay it engendered was unreasonable.

The UCP is clear that the decision to reject or to accept documentation should be made on the basis of the documents alone. *See* Article 16(b).

> "If the documents in any respect do not conform to the terms of the credit, the obligor bank must forthwith determine whether it will stand upon its rights to reject the documents or whether it will waive the defect. It will not do for bank or buyer to wait and ride the market." *Bank of Cochin*, 808 F.2d at 212.

It was therefore improper for HNB to consult with Lerner on the waiver issue. HNB's consultation with Lerner also violated the principle that a letter of credit is completely distinct from the underlying sales transaction. HNB's duty to make payment is not conditioned on Lerner's satisfaction with Full–Bright's performance.

Moreover, HNB is further estopped from asserting the deficiency of the documents because of its handling of those documents. Although HNB claimed that it was holding the documents at plaintiff's disposal, in a cable dated October 26, 1989, HNB informed plaintiff that "documents will not be returned to you at this time." This is contrary to UCP Article 16(e).

HNB clearly did not comply with the requirements of Article 16. The consequences of that failure to comply is that HNB is

estopped from claiming that plaintiff's documents failed to comply with the terms of the letter of credit. *See* Article 16(e).

Plaintiff has established that it is entitled to payment on the letter of credit. Since HNB has not put forth evidence of a viable defense, plaintiff is entitled to an entry of summary judgment.

Counsel for the plaintiff are directed to settle an order and judgment consistent with this opinion on seven (7) days' notice within fourteen (14) days of the date of this opinion.

It is SO ORDERED.