**FIRST AFRICAN TRUST BANK LTD., Plaintiff–Appellant,**

v.

**BANKERS TRUST COMPANY, Defendant–Appellee.**

No. 535, Docket 93–7511.

United States Court of Appeals, Second Circuit.

Argued Oct. 27, 1993.

Decided Oct. 29, 1993.

Joseph D. Becker, Becker, Glynn, Melamed & Muffly, New York City (Robert C. Muffly, Richard N. Chassin, Marco V. Masotti, Becker, Glynn, Melamed & Muffly, of counsel), for plaintiff-appellant.

David B. Eizenman, Moses & Singer, New York City (David M. Satnick, David B. Picker, Mitchell D. Bernstein, Moses & Singer, of counsel), for defendant-appellee.

Before: VAN GRAAFEILAND, PIERCE and WINTER, Circuit Judges.

WINTER, Circuit Judge:

First African Trust Bank Ltd. ("FATB"), a Nigerian corporation, appeals from Judge Patterson's granting of a motion for summary judgment by Bankers Trust Company ("BTC"). FATB had brought suit against BTC in the Southern District of New York based on BTC's failure to confirm and execute transactions on FATB's New York accounts with BTC. FATB claims that these transactions were ordered by its authorized representatives. BTC successfully persuaded Judge Patterson that these individuals lacked any such authority as a matter of law. We affirm.

FATB began doing business in late 1990. It opened an account with BTC in February 1991 to enable BTC to confirm letters of credit issued by FATB for its customers. Almost from its inception, two groups battled for control of FATB in Nigeria. One group, led by Chief Ralph Obioha had put up the original capital for the bank. That capital proved insufficient and led to an investment by a second group led by Basil O. Ezegbu. As a result of that investment, the Ezegbu group maintained operational control of the bank and were confirmed by BTC as authorized signatories in February and August 1991. Meanwhile, the conflict led a Nigerian

court to appoint a receiver to operate FATB pending a resolution of the litigation. On November 1, 1991, the Obioha group won a victory in a Nigerian trial court permitting them to install their own directors, which they did. Ezegbu's group appealed and, on December 5, 1991, was granted an order vacating the lower court's decision, "restoring the status quo as at before" the trial court's decision, and reinstating the Ezegbu slate of directors.

The Obioha group maintained control of FATB, however, and continued to issue instructions to BTC in New York to execute transactions. BTC refused to do so on the ground that the Obioha directors were not authorized signatories. The Obioha group then appealed the December 5 decision to the Nigerian Supreme Court, which found the Obioha group in contempt of the appellate court's decision. FATB, still controlled by the Obioha group, brought the present action in the Southern District of New York for damages and for an injunction directing BTC to release FATB deposits and to follow FATB instructions signed by the Obioha directors. Judge Patterson denied FATB's motion for a preliminary injunction and, following cross-motions for summary judgment, granted summary judgment to BTC on April 26, 1993.

FATB argues that Judge Patterson's reliance on the decisions of the Nigerian appellate court was misplaced because these decisions were interlocutory and, as such, did not collaterally estop FATB from insisting that BTC execute instructions regarding FATB accounts. FATB claims that, because the Nigerian Court of Appeal qualified its order "generally restoring the status quo ante as at before the date of the delivery of the [trial court] judgment on 1st November, 1991," with the phrase, "pending the appeal before us," the order was "inconclusive" and therefore did not preclude the Obioha group from exercising control over FATB's accounts with BTC.

This argument is wrong because the Obioha group was obligated to obey the Nigerian Court of Appeal's order pending appeal. Moreover, the Nigerian Court of Appeal entered a separate order, unqualified by the phrase "pending the appeal," reinstating the Ezegbu group in the positions at FATB. The Nigerian Court of Appeal's order was therefore neither "inconclusive" nor "interlocutory," and BTC was entitled to rely on it to identify the properly authorized signatories for the FATB accounts. *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir.1961), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). Indeed, to have done otherwise would have exposed BTC to liability for accepting an invalid indorsement. *Tonelli v. Chase Manhattan Bank,* 41 N.Y.2d 667, 394 N.Y.S.2d 858, 861, 363 N.E.2d 564, 567 (1977).

FATB's argument that the district court improperly relied on a "strict compliance" standard is also wrong. It is also irrelevant in light of the disposition of FATB's first argument. FATB contends that the district court miscited *Bank of Cochin Ltd. v. Manufacturers Hanover Trust Co.,* 612 F.Supp. 1533, 1537 (S.D.N.Y.), *aff'd,* 808 F.2d 209 (2d Cir.1986), for the proposition that a confirming bank must strictly comply with the agreement between it and its *customer* when following that customer's instructions. FATB asserts that *Bank of Cochin* applies only to the relationship between confirming bank and *beneficiary.* Not only is this is an overly narrow interpretation of *Bank of Cochin,* but it also ignores the plain fact that whether compliance must be "strict," "normal" or even "loose," execution of orders by BTC on FATB's behalf required authorization from a contractually authorized source. The Obioha group was not such a source.

The Ezegbu group was twice reconfirmed as authorized signatories, and, as we have held above, BTC was entitled, if not obligated, to rely on the Nigerian Court of Appeal's decision reinstating the Ezegbu group to authority over FATB.

Finally, FATB maintains that genuine issues of material fact remain as to the interpretation of the contract between FATB and BTC, and, therefore, that the district court erred in placing the burden on FATB to prove the legality of the Obioha group's authority. FATB bases this argument on purported ambiguities in the Nigerian Court of Appeal's decision, specifically whether the re-

turn to "the status quo ante" at November 1, 1991, established Ezegbu or the court-appointed receiver in authority at FATB. No such ambiguities exist, and their burden of proof issue is irrelevant. This is apparent for reasons stated above and confirmed by the decision of the Nigerian Supreme Court of November 20, 1992, that declares those orders to be "clear and mean what they say.... The orders have the effect of reinstating all the employees of [FATB] that were terminated [by the Obioha group]." The district court was therefore correct in holding that FATB's lack of "legal authority to instruct Bankers Trust to disburse funds pursuant to the letter of credit" barred it from asserting BTC's liability for refusing to accept those instructions.

We therefore affirm.